UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ANGELA M. NORMAN,              )
                               )
    Plaintiff,                 )    Case No. 3:10–0500
                               )    Judge Trauger
v.                             )
                               )
ROLLING HILLS HOSPITAL, LLC,   )
                               )
    Defendant.                 )

## MEMORANDUM AND ORDER

Pending before the court is defendant Rolling Hills Hospital, LLC's Motion to Dismiss (Docket No. 14). This motion will, for the most part, be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Angela Norman, is an African-American female and a former employee of the defendant, Rolling Hills Hospital, LLC (RHH), which operates a mental health care facility in this District.[1] The plaintiff claims that, during the course of her employment, she was subjected to racial discrimination and harassment. Specifically, she claims that RHH employees compared her to "Buckwheat," told her that she must like chicken because all African-American people like chicken, stated that she should not act like she was "in the 'hood,'" and asked her "how she felt having an African American father and Caucasian mother." (Docket No. 10 at 2-3.)

The plaintiff also alleges that her superiors generally spoke to her more harshly than they did to her Caucasian colleagues, disciplined her for conduct for which Caucasian employees were

---

[1] Unless otherwise noted, the facts are drawn from the Amended Complaint (Docket No. 10.)

1

not, and reduced her hours "when they did not do so to Caucasian employees." (*Id.*) The plaintiff also claims that, on "the very same day" that she complained to RHH's Human Resources Director about the racial discrimination, she was disciplined for improperly restraining a patient one month earlier, even though Caucasian employees who had participated in the same restraint were not so disciplined. (*Id.* at 3-4.) The plaintiff maintains that the Caucasian employees were not disciplined until "two months later when [RHH] learned that plaintiff had complained to the Tennessee Human Rights Commission about [RHH's] disparate treatment of her." (*Id.* at 4.) The plaintiff alleges that she was terminated from her position "because of her race and/or her complaining about, opposing and/or refusing to participate in unlawful conduct." (*Id.* at 4-5.)

On May 21, 2010, the plaintiff filed her initial Complaint, asserting claims under Title VII, Section 1981, the Tennessee Human Rights Act (THRA), and Tennessee common law ("outrage" or intentional infliction of emotional distress – IIED). (Docket No. 1 at 1-2.) The plaintiff alleged that she filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and with the Tennessee Human Rights Commission (THRC) and had "received Notice of Right to Sue." (*Id.* at 2.) In her initial Complaint, providing little detail, the plaintiff alleged that she was discriminated against due to her race, subjected to a racially hostile work environment, and was retaliated against, all in violation of Title VII, Section 1981, and the THRA. (*Id.*)

RHH filed a Motion to Dismiss on June 18, 2010, arguing that, because the plaintiff had only alleged that she had been discriminated against in the workplace and had failed to provide any specific allegations of discriminatory intent or conduct, her Complaint should be dismissed pursuant to Rule 12(b)(6) and the Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

2

1949-50 (2009), which dictates that the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," in order to sustain a Complaint but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (Docket No. 6 at 2.)

On June 25, 2010, in response, the plaintiff filed the Amended Complaint containing the specific allegations of discrimination and retaliation discussed above. (Docket No. 10.) On July 8, 2010, consistent with settled law, the court concluded that RHH's initial Motion to Dismiss was mooted by the filing of the Amended Complaint. (Docket No. 13.) The next day, RHH filed the pending Motion to Dismiss, arguing that the plaintiff's Amended Complaint should be dismissed for failure to state a claim under Rule 12(b)(6).

## ANALYSIS

### I. Standard of Review

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009).

**II.    RHH's Motion**

   **A.    Exhaustion**

After walking through the allegations and outlining the relevant standard of review at some length, RHH first argues that the court does not have jurisdiction over the plaintiff's Title VII claims because the plaintiff failed, as required, to exhaust her administrative remedies. (Docket No. 15 at 7 citing *Randolph v. Ohio Dept. of Youth Servs.*, 453 F.3d 724, 731 (6th Cir. 2006)("a person seeking to bring a discrimination claim under Title VII in federal court must first exhaust her administrative remedies.") Specifically, RHH alleges that the plaintiff has not received a "right to sue" letter from the EEOC, which would permit her to file suit in this court under Title VII. (Docket No. 15 at 8 citing *Sabouri v. Ohio Dept. of Job & Family Servs.*, 29 Fed. Appx. 253, 255 (6th Cir. 2002)(in order to exhaust administrative remedies and file suit under Title VII, "a claimant must: 1) file a timely charge of discrimination with the EEOC; and (2) receive and act upon the EEOC's notice of right to sue.").

The record presents some difficulty for RHH on this point. The plaintiff's Amended Complaint alleges that administrative remedies were properly exhausted, and the plaintiff has

4

attached to her Response her "right to sue letters" issued by the THRC and the EEOC on April 28, 2010 and May 5, 2010, respectively. (Docket No. 16 Ex. 1.)

RHH claims, however, that the plaintiff filed another EEOC charge on May 24, 2010, and that the plaintiff has not received a determination from the EEOC on that charge. (Docket No. 15 at 7.) Thus, according to RHH, "Plaintiff has not satisfied the[] [exhaustion] prerequisites on her subsequent Title VII claims, and they must be dismissed." (Docket No. 15 at 8.) RHH then launches into a lengthy discussion of the purposes of the exhaustion requirement before contrasting the initial EEOC charge with the charge that the plaintiff supposedly filed on May 24, 2010; RHH claims that the latter charge contains significantly more factual detail and allegations. (*Id.* at 8-10.) None of this lengthy discussion of the contrasts between the EEOC charges has any citation to the record, and the charges are not in the record. Simply, at this stage, the court has no way to evaluate the merit of RHH's argument, and, thus, the court cannot grant RHH any relief.

### B. The Sufficiency of the Amended Complaint Allegations

Next, RHH claims that, after stripping away the legal conclusions in the Amended Complaint, it becomes clear that the plaintiff has failed to allege sufficient factual content to raise a facially plausible claim of discrimination. (Docket No. 15 at 10-11.) RHH notes that a Title VII discrimination claim ultimately depends upon "either direct evidence of discrimination or circumstantial evidence that would allow an inference of discriminatory intent." (*Id.* citing *Ross v. Pfizer, Inc.*, 2010 WL 1063838, *3 (6th Cir. March 23, 2010)). RHH maintains that the plaintiff "has not averred, much less shown, either." (*Id.*)

That is, the plaintiff has supposedly pled "no direct evidence of discriminatory intent," providing only "unconvincing," broad generalizations regarding improper treatment with no

5

allegations as to who made improper comments or when they were made. (*Id.* at 11-12.) As to circumstantial evidence of discrimination, RHH points out that "a plaintiff establishes a *prima facie* case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." (*Id.* citing *Huguley v. GM*, 52 F.3d 1364, 1371 (6th Cir. 1995)). RHH maintains that, in this regard, the plaintiff has simply not alleged enough; that is, she alleges Caucasian employees "were treated more favorably but she does not specify how." (*Id.*)

Next, turning to the hostile work environment claims, RHH notes that a hostile work environment occurs "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." (*Id.* quoting *Randolph*, 453 F.3d at 733). RHH goes on to discuss that the hostile character of a work environment is ultimately evaluated under an objective and subjective test and that the court "must consider the 'totality of the circumstances in determining whether the harassment was sufficiently severe or pervasive'" to be actionable. (*Id.* at 13 quoting *Randolph*, 453 F.3d at 733). RHH then notes that there are no allegations of threats of violence against the plaintiff or specific allegations that her work performance was affected by the environment and, therefore, RHH concludes that the allegations "cannot rise to the level of a hostile work environment." (*Id.* at 13.)

Finally, RHH argues that the Section 1981 and THRA claims fail for the same reason as the Title VII claims, as the elements required to demonstrate a *prima facie* case of employment discrimination under all three statutes are the same. (Docket No. 15 at 14 citing *Thompson v. City of Memphis*, 86 Fed. Appx. 96, 104 (6th Cir. 2004); *Aquino v. Honda of Am., Inc.*, 158 Fed. Appx.

6

667, 674 (6th Cir. 2005)). And, recognizing that an IIED claim is only appropriate with allegations of conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," RHH argues that the IIED claim should be dismissed, as no such conduct is alleged here. (*Id.* at 15 quoting *Bryan v. Campbell*, 720 S.W. 2d 62, 64 (Tenn. Ct. App. 1986)).

RHH's argument on the IIED claim has merit. The plaintiff's specific discussion of the IIED claim in the Amended Complaint is simply a series of legal conclusions, and, while the allegations of racial discrimination are troubling, there is nothing in the Amended Complaint that suggests that the defendant's conduct here advanced into the realm of the truly outrageous. *See Lockett v. Marsh USA*, 354 Fed. Appx. 984, 998 (6th Cir. 2009)("an employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more.")(internal quotation omitted). Therefore, the court will dismiss the IIED claim as not facially plausible.

The remainder of RHH's argument is strained and unpersuasive. As to the supposedly wanting allegations of discrimination that RHH argues render the Title VII, Section 1981, and THRA claims non-viable, it is clear that the plaintiff has alleged sufficient facts to state a facially plausible claim of race-based employment discrimination. For instance, she specifically alleges that, as an African-American employee, she was not only spoken to, and treated, more harshly than her Caucasian colleagues, but RHH "reduced [her] work hours when they did not do so to Caucasian employees" and that she was disciplined for applying a restraint procedure when other Caucasian employees were not, at least not initially. (Docket No. 10 at 2-4.) Under the requirement that, at this stage, the court must construe the complaint in the light most favorable to

7

the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff, either of these allegations alone sufficiently states a claim for employment discrimination, setting aside the other, perhaps more generalized, allegations of discrimination.

Additionally, as to the hostile work environment claims, the plaintiff has clearly alleged that she suffered "discriminatory intimidation, ridicule, and insult," and she has provided specific detail about specific names that she was called and specific ridicule that she received based upon her race. Again, the facts adduced in discovery may show this claim to be ultimately without merit, but, at this stage, given the specific allegations of pervasive name calling and racial hostility, the court cannot say that the plaintiff's claim of a hostile work environment is "facially implausible." *See Corrales v. Chase Bankcard Serv., Inc.*, 128 Fed. Appx. 598, 599 (9th Cir. 2005)(in case arising from allegedly humiliating workplace interview, "[c]onsidering all the circumstances alleged in the complaint, we cannot say that a reasonable woman in Corrales' position would not consider the terms and conditions of her employment altered by the actions of the diversity officer and the supervisors.")

For the reasons discussed herein, RHH's Motion to Dismiss (Docket No. 14) is **GRANTED IN PART and DENIED IN PART**, and the plaintiff's IIED claim is hereby **DISMISSED.** The other relief sought by RHH is **DENIED**.

It is so Ordered.

Entered this 22nd day of July 2010.

                                              ALETA A. TRAUGER
                                              United States District Judge