IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ANGELA M. NORMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:10-cv-0500 |
| | ) | Judge Trauger |
| ROLLING HILLS HOSPITAL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM

Pending before the court is the Motion for Summary Judgment filed by the defendant (Docket No. 30), to which the plaintiff has filed a response (Docket No. 36), and in support of which the defendant has filed a reply (Docket No. 39). For the reasons discussed below, the defendant's motion will be granted in part and denied in part.

# FACTS

The plaintiff, Angela Norman, is a Certified Nurse Technician who was employed as a mental health specialist by defendant Rolling Hills Hospital, LLC ("Rolling Hills").[1] Rolling Hills is a private psychiatric care facility that serves adolescent, adult, and geriatric patients. The plaintiff, who is African-American, alleges that Rolling Hills discriminated against her based on race.

---

[1] Unless otherwise noted, the facts are drawn from the defendant's statement of undisputed facts (Docket No. 32), the plaintiff's response thereto (Docket No. 37), the defendant's reply (Docket No. 40), and related exhibits. The court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

1

Rolling Hills hired the plaintiff as a full-time employee in June 2009. The plaintiff alleges that, in the following months, two white co-workers made several racially insensitive statements. In particular, nurse Emily Porter[2] asked the plaintiff (1) how it felt to have a black father and a white mother and (2) how she could afford to live by a lake and own a laptop computer. Co-worker Will Evans once told the plaintiff that she "need[ed] to quiet it down, we're not in the hood" and asked her, "Don't all of you eat chicken?" (Docket No. 38, Ex. 1 at 121.) The plaintiff also heard Evans tell another African-American employee that she "looked like Buckwheat." (*Id.*)

The plaintiff further alleges that the Director of Nursing, Angela Klinikowski, was "bubbly and friendly" toward white employees but "talked down" to the plaintiff and other African-American employees. (*Id.* at 75, 150; *see also id.* at 102 ("[Klinikowski's] demeanor is totally different to the black employees than it is to the Caucasian employees.") At her deposition, the plaintiff recounted one instance where Klinikowski pointed at her and told her to pick up a piece of paper from the floor. The plaintiff testified that there were also "several incidents" where Klinikowski had "pointed at [her]" and "just belittled [her.]" (*Id.* at 77). In addition, Klinikowski once harshly told the plaintiff, in front of another supervisor, that the plaintiff was not where she was supposed to be. (*Id.*) The plaintiff testified that these incidents "totally humiliated" and "embarrassed" her. (*Id.*) The plaintiff did not, however, ever hear Klinikowski use racial slurs or make derogatory jokes.

On the morning of October 15, 2009, the plaintiff met with Elizabeth Starnes, Rolling

---

[2] The parties dispute whether Porter had supervisory authority over the plaintiff.

Hills' Director of Human Resources, to report the allegedly racist conduct of Klinikowski, Porter, and Evans. Starnes told the plaintiff that she would speak to Porter and Evans and would implement diversity classes.

Later that afternoon, the plaintiff noticed that Klinikowski seemed "upset" with her. (*Id.* at 156.) At 5:30 pm, the plaintiff was called into a meeting with Klinikowski and Starnes, where she received a disciplinary "Corrective Action Form" regarding a supposedly improper patient restraint that had occurred on September 20, 2009. (*Id.*, Ex. 4 at 14.) The form cited the plaintiff for a "company policy violation" and "safety concerns" and stated that she "physically restrained a geriatric patient, which is not endorsed by Rolling Hills Hospital as a safe method of caring for patients." (*Id.*) Although the form did not indicate that further action was needed, it noted that "[a]ny further infractions could be subject to additional disciplinary action up to and including termination." (*Id.*) At the meeting, the plaintiff was shown a video of the incident, in which the plaintiff, Porter, and Kara Beasley, a white Rolling Hills employee, restrained a male patient.[3] The plaintiff and Porter each restrained one of the patient's arms. The plaintiff disputes that the restraint was improper; she maintains that she was following the orders of her supervisors and that she was attempting to prevent the patient from endangering himself. The plaintiff was not suspended or demoted as a result of the writeup.

Porter and Beasley were not written up on October 15. On November 15, 2009, the plaintiff filed a charge of discrimination with the Tennessee Human Rights Commission, and on

---

[3] A fourth person, Nick Vargo, was also present during the September 20 incident, but he was employed by a temporary staffing agency, not by Rolling Hills. (Docket No. 38, Ex. 3 at 109.)

December 7, 2009, Rolling Hills received a copy of the charge. On December 17 and 21, 2009, Rolling Hills issued Corrective Action Forms to Porter and Beasley, respectively, for the September 20 restraint incident. Those forms were backdated to October 16, 2009, although the supervisors' signatures reflected December dates. At his deposition, Justin Adams, a human resources manager and Rolling Hills' Rule 30(b)(6) witness, testified that he did not know why Porter and Beasley were not disciplined earlier. (*Id.*, Ex. 3 at 78.)

At her deposition, the plaintiff testified that Klinikowski's treatment of her became "a hundred times worse" after her complaints of discrimination. (*Id.*, Ex. 1 at 154.) In addition, in late December 2009, the plaintiff's work hours were cut from three to two 12-hour shifts per week. The plaintiff testified that, at some undefined time, she had discussed with Starnes the possibility of cutting her hours and working part time. Nevertheless, the plaintiff testified that she eventually "chose to stay on full time." (*Id.* at 164.) The plaintiff claims that her shifts were reduced in retaliation for her complaints regarding discrimination, while Rolling Hills argues that it was merely fulfilling her earlier request.[4]

In January 2010, the plaintiff requested a medical leave of absence for anxiety and depression. On January 13, 2010, Rolling Hills granted a 30-day leave, and on February 12, 2010, it granted another 30-day leave. In March, however, the plaintiff did not return to work. At her deposition, the plaintiff testified that there was "no way [she] could have gone back under those [discriminatory] circumstances." (Docket No. 38, Ex. 1 at 183.) At some point, the

---

[4] Rolling Hills' Rule 30(b)(6) witness testified that he did not know why the plaintiff's hours were reduced. (Docket No. 38, Ex. 3 at 114.)

plaintiff asked a co-worker to check to see if she had been placed on Rolling Hills' work schedule, but she had not. In late May 2010, the plaintiff called Starnes and left a message, but Starnes never returned her call. (Docket No. 38, Ex. 1 at 180.) In October 2010, after ten months of the plaintiff's absence, Rolling Hills "administratively discharged" the plaintiff, removing her from its payroll system.

In her Amended Complaint, the plaintiff has asserted claims for violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.*[5] The plaintiff alleges that Rolling Hills violated these statutes by (1) discriminating against her based on race, (2) creating a racially hostile work environment, and (3) retaliating against her based on her complaints of discrimination. Rolling Hills has filed a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, arguing that each of the plaintiff's claims must be dismissed.

## ANALYSIS

**I.   Summary Judgment Standard**

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the

---

[5] The Amended Complaint also contains a claim for intentional infliction of emotional distress, but the court previously dismissed that claim. (Docket No. 17.)

plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan*, 578 F.3d at 374.

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II. Hostile Environment

The court will first examine the plaintiff's hostile environment claim. The defendant argues that the plaintiff has failed to present sufficient evidence of severe and pervasive harassment. (Docket No. 31 at 11-14.)

Although the plaintiff has asserted her claims under Title VII, § 1981, and the THRA, the court need only conduct a single analysis. *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999) (noting that § 1981 claims are reviewed "under the same standards as claims of race discrimination brought under Title VII"); *Mullins v. Goodyear Tire & Rubber Co.*, 291 Fed. Appx. 744, 745 n.1 (6th Cir. 2008) ("The THRA is a state law analogue to Title VII and the

6

statutes are analyzed identically."). To establish the existence of a hostile work environment under Title VII, the plaintiff must show that: "(1) she is a member of a protected class; (2) she was subjected to unwelcomed racial harassment; (3) the harassment was race based; (4) the harassment unreasonably interfered with her work performance by creating an environment that was intimidating, hostile, or offensive; and (5) [the] employer [is liable]." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007).

To satisfy the fourth prong of this test, the plaintiff must show that "the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* at 707 (quoting *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560, 562 (6th Cir. 1999)). This showing has both an objective and a subjective component. *Id.* "It requires the court to examine, under the totality of the circumstances, 'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance.'" *Id.* (quoting *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006)) (alteration in original).

Here, the plaintiff has presented evidence of seven specific incidents that occurred over the course of five months: (1) Evans' request that the plaintiff quiet down because they were not "in the hood"; (2) Evans' suggestion that all African-Americans eat chicken; (3) Evans' statement that another employee looked like Buckwheat; (4) Porter's question regarding how it felt to have a black father and white mother; (5) Porter's question regarding how the plaintiff could afford her house and laptop; (6) Klinikowski's demand that the plaintiff pick up a piece of

7

paper from the floor; and (7) Klinikowski's statement that the plaintiff was not where she was supposed to be. The latter three incidents were not explicitly racial. The plaintiff also testified that, generally, Klinikowski talked down to her and spoke to her in harsh tones. (*See* Docket No. 38, Ex. 1 at 103 (stating that Klinikowski "always talks down . . . to the black employees"), 105 (stating that the plaintiff witnessed Klinikowski "be ugly to" another black employee), 150 ("Just even the way that [Klinikowski] spoke to us as staff was harsh – harsh when she spoke to us as the black employees."), 154 (stating that the plaintiff once "passed [Klinikowski] in the hallway and she wouldn't even speak" and that, after the plaintiff had complained of discrimination, Klinikowski's conduct became "a hundred times worse").)

Taken together, however, this evidence is not enough to support a *prima facie* claim. The handful of isolated statements by Evans and Porter, while offensive, are plainly insufficient to create a hostile work environment. These incidents "amount[] to 'mere offensive utterances,' which are not actionable under Title VII." *Clay*, 501 F.3d at 708 (finding that 15 specific instances of harassment over the course of two years were not "pervasive"); *see also Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000) (stating that "simple teasing, offhand comments, and isolated incidents" do not create a hostile environment); *Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1086 (8th Cir. 2010) (finding that sporadic racist comments, including incidents regarding fried chicken and Buckwheat, were insufficient to show a hostile work environment).

Furthermore, the plaintiff has not produced sufficient evidence to maintain a claim based on Klinikowski's conduct. The plaintiff has given only two specific examples of Klinikowski's

rude behavior, in which Klinikowski used harsh tones when speaking to her. Again, these incidents are too isolated to create a hostile work environment. Aside from those examples, the plaintiff testified that Klinikowski was generally rude. But the plaintiff's vague allegations – which do not involve explicitly racial harassment – are not enough to support a hostile environment claim. *Thompson v. UHHS Richmond Heights Hosp., Inc.*, 372 Fed. Appx. 620, 622, 626 (6th Cir. Ohio 2010) (dismissing a hostile environment claim because, although the plaintiff alleged that her supervisor gave preferential treatment to white employees, the plaintiff did not "offer specific incidents – dates, times, full descriptions – of racially-based harassment"); *see also Clay*, 501 F.3d at 706 (requiring evidence that "set[s] forth specific conduct for which [the plaintiff] was berated and for which her white co-workers were not"); *Batuyong v. Gates*, 337 Fed. Appx. 451, 457 (6th Cir. 2009) (affirming district court's dismissal of a hostile environment claim based on "various incidents in which [the plaintiff] was criticized by her supervisors, resulting in feelings of depression and humiliation"); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (limiting Title VII's application to only "extreme" conduct to avoid turning the statute into a "general civility code").

Because the plaintiff's evidence does not sufficiently show that she was subjected to severe, pervasive racial harassment, the court will dismiss her hostile environment claim.

### III. Racial Discrimination

Next, Rolling Hills argues that the plaintiff cannot state a *prima facie* claim for racial discrimination or disparate treatment. (Docket No. 31 at 5-8.)

The court will analyze the plaintiff's discrimination claim under the familiar *McDonnell*

*Douglas* burden-shifting framework.[6] *Clay*, 501 F.3d at 703; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff must produce evidence sufficient to establish a *prima facie* claim. *Clay*, 501 F.3d at 703. Then, "the burden shifts to the defendant to articulate a 'legitimate, non-discriminatory reason' for the employment decision." *Id.* If the defendant does so, "the burden shifts back to the plaintiff to show that the reason put forth by the defendant is pretextual, which can be done by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Id.* (quotation marks omitted).

To establish a *prima facie* claim of racial discrimination, the plaintiff must demonstrate that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) a person outside of the protected class was treated more favorably than she. *Id.* In the context of a discrimination claim, an "adverse employment

---

[6] The plaintiff, citing *Gossett v. Tractor Supply Co.*, 320 S.W.3d 777 (Tenn. 2010), argues that the *McDonnell Douglas* framework does not apply to her THRA claims. (Docket No. 36 at 7 n.2.) In *Gossett,* the Tennessee Supreme Court rejected the framework, holding that a THRA plaintiff may survive summary judgment merely by providing evidence sufficient to support a *prima facie* claim. 320 S.W.3d at 783. This holding was largely premised on Tennessee's rule that, when deciding a defendant's summary judgment motion, a court should construe the evidence in the plaintiff's favor and must discard the defendant's countervailing evidence. *Id.* at 784.

At least one federal district court has declined to follow *Gossett*. *Moling v. O'Reilly Auto., Inc.*, No. 09-1100, 2011 U.S. Dist. LEXIS 3543 (W.D. Tenn. Jan. 13, 2011); *see also Blackburn v. Shelby County*, No. 2:07-cv-02815, 2011 U.S. Dist. LEXIS 16851, at *87 (W.D. Tenn. Feb. 18, 2011) (citing *Moling*). After conducting a thorough analysis, the *Moling* court found that *Gossett* announced a state procedural rule that is not binding on federal courts. 2011 U.S. Dist. LEXIS 3543 at *49-63. This court does not need to address the issue, however; even under the *McDonnell Douglas* framework, the plaintiff's discrimination and retaliation claims remain for trial.

action" "requires a materially adverse change in the terms and conditions of employment." *Watson v. City of Cleveland*, 202 Fed. Appx. 844, 854 (6th Cir. 2006). The adverse change "'must be more disruptive than a mere inconvenience or an alteration of job responsibilities'"; it may include, for example, "'termination of employment, a demotion evidenced by a decrease in wage or salary, . . . a material loss of benefits, . . . or other indices that might be unique to a particular situation.'" *Id.* (quoting *Kocis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)).

The defendant argues that the plaintiff has not shown that she suffered an adverse employment action. (Docket No. 31 at 7-8.) In response, the plaintiff argues that her diminished hours, the disciplinary writeup, and the teasing and rudeness that she endured constitute adverse actions.[7] (Docket No. 36 at 9.)

The writeup that the plaintiff received does not constitute an adverse employment action.

---

[7] The plaintiff suggests that, taken collectively, this conduct resulted in her constructive discharge. (Docket No. 36 at 8-9.) "To establish a constructive discharge claim, the plaintiff must demonstrate that: (1) the defendant deliberately created intolerable working conditions, as perceived by a reasonable person; and (2) the defendant did so with the intention of forcing the plaintiff to quit." *Lindsey v. Whirlpool Corp.*, 295 Fed. Appx. 758, 770 (6th Cir. 2008) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 568-69 (6th Cir. 2001)). Constructive discharge "requires a determination that working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.* (quotation marks omitted). Indeed, "unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." *Dendinger v. Ohio*, 207 Fed. Appx. 521, 527 (6th Cir. 2006) (quotation marks omitted).

The plaintiff does not treat her alleged constructive discharge as a separate claim. In any event, nothing, aside perhaps from the reduction in hours, suggests that the alleged discrimination here was so remarkable that she was effectively forced to resign. Indeed, as explained above, the alleged teasing and rudeness endured by the plaintiff is insufficient to meet the lower threshold of a hostile environment claim. *See id.* (noting that, even if a plaintiff has proven a hostile environment, she has not necessarily proven a constructive discharge).

*Hill v. Nicholson*, 383 Fed. Appx. 503, 509 (6th Cir. 2010) (holding that a written counseling was not an adverse employment action because it did not have "any long-term impact on the terms or conditions of [the plaintiff's] employment"). "'In general, a negative performance evaluation does not constitute an adverse employment action unless the evaluation has an adverse impact on an employee's wages or salary.'" *Id.* (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008)). Here, the plaintiff's wages were not impacted by the writeup. Nor does the teasing and rudeness by the plaintiff's co-workers, which was not severe enough to create a hostile work environment, constitute an adverse action.

The plaintiff did suffer an adverse employment action, however, when her hours – and, consequently, her weekly pay – were cut in December 2009. Because the defendant did not cut the hours of the plaintiff's white co-workers, the plaintiff has established a *prima facie* claim of discrimination based on that action. The defendant argues that it had a legitimate reason for reducing the plaintiff's hours – namely, that it was honoring the plaintiff's request to work part time. The defendant relies exclusively on the plaintiff's deposition testimony for this proposition. The plaintiff did testify that, at some point, she discussed the possibility of working part time with the human resources department, but she also explicitly testified that she "chose to stay on full time." (Docket No. 38, Ex. 1 at 164.) Presumably, the plaintiff communicated this choice to the defendant. This evidence suggests that the plaintiff's previous request did not actually motivate the reduction in hours, and it sufficiently rebuts the defendant's proffered reason.

Accordingly, the plaintiff's racial-discrimination claim, to the extent that it is based on

the December 2009 reduction in her hours, will remain for trial.

## IV. Retaliation

Finally, the defendant argues that the plaintiff cannot maintain her retaliation claim. (Docket No. 31 at 16-19.)

To establish a *prima facie* claim of retaliation, a plaintiff must show that: "(1) the employee has engaged in Title VII-protected activity; (2) the employer had knowledge of this fact; (3) the employee suffered an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action." The parties agree that the plaintiff's complaint to Starnes regarding racial discrimination and the plaintiff's EEOC charge were Title VII-protected activity and that the defendant knew of this activity.

The defendant once again argues, however, that the plaintiff has not shown an adverse employment action. (Docket No. 31 at 17.) But the burden of showing an adverse employment action is "less onerous in the retaliation context than in the anti-discrimination context." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595-96 (6th Cir. 2007). To show an adverse action, a plaintiff must show that the employer's conduct "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) (quotation marks omitted).

For the reasons already discussed, the December 2009 reduction in the plaintiff's hours was an adverse employment action. Moreover, with respect to the retaliation claim, the disciplinary writeup that the plaintiff received also constitutes an adverse action. If employees

know that they will receive writeups in retaliation for reporting racial discrimination, they might reasonably feel dissuaded from making such reports.[8] *See Halfacre v. Home Depot, U.S.A., Inc.*, 221 Fed. Appx. 424, 432 (6th Cir. 2007) (stating that a poor performance evaluation can, in certain circumstances, constitute an adverse action); *Crawford v. Carroll*, 529 F.3d 961, 974 n.13 (11th Cir. 2008) ("*Burlington* also strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions.").

The defendant further argues that there is no causal connection between the adverse actions and the plaintiff's protected activity. But the plaintiff received her writeup on the same day that she reported the alleged discrimination to Starnes, and her hours were reduced within three weeks of Rolling Hills' receipt of her Tennessee Human Rights Commission charge. "'[E]vidence . . . that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation.'" *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. Ohio 2004) (inferring causation when employee was fired three months after protected activity) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)) (ellipses in original). Here, the temporal proximity, combined with the fact that the plaintiff's white co-workers were not disciplined at the same time and did not have their hours reduced, is

---

[8] The plaintiff also argues that Klinikowski "ratcheted up the harassment" in retaliation for her Title VII-protected activity. (Docket No. 36 at 15.) The plaintiff did not give any specific instances of such harassment at her deposition, however, despite defense counsel's repeated questions requesting such examples. Instead, she simply testified that Klinikowski's behavior became "a hundred times worse." (Docket No. 38, Ex. 1 at 154.) This vague statement, unsupported by specific examples of Klinikowski's conduct, cannot support the plaintiff's retaliation claim.

14

sufficient to show causation. Thus, the plaintiff has made out a *prima facie* case of retaliation.

The defendant claims that it had a legitimate reason for the disciplinary writeup, because Klinikowski and Starnes actually believed that the plaintiff had improperly restrained the patient.[9] The defendant also points out that the plaintiff's two white co-workers were eventually written up for the same incident. But the plaintiff was the only employee to receive a writeup on October 15; her co-workers were not written up until late December, shortly after Rolling Hills discovered that the plaintiff had filed a charge with the Tennessee Human Rights Commission. Under these circumstances, a reasonable juror could conclude that the defendant did not initially plan to discipline the white employees and that it only did so to appear evenhanded in the face of potential litigation. This undermines the defendant's claim that it was genuinely concerned with enforcing its restraint policy. Thus, the fact that the white employees were not immediately disciplined is enough to rebut the defendant's proffered reason for the plaintiff's writeup.

Accordingly, the plaintiff's retaliation claim, to the extent that it is based on the reduction in her hours and on the writeup that she received, will remain for trial.

## **CONCLUSION**

For the reasons discussed above, the defendant's Motion for Summary Judgment will be granted in part and denied in part. The plaintiffs' claim for hostile work environment will be dismissed. Her claims for discrimination and retaliation, as limited herein, will remain for trial.

---

[9] For the reasons already discussed, the plaintiff has sufficiently rebutted any proffered reason for the reduction in her hours.

An appropriate Order will enter.

_____
ALETA A. TRAUGER
United States District Judge